TONOPAH & SALT LAKE MIN. CO. v. TONOPAH MIN. CO. OF NEVADA.

(Circuit Court, D. Nevada. August 3, 1903.)

No. 736.

1. MINING CLAIMS—VALIDITY OF LOCATION—OVERLAPPING CLAIMS.

The Silver Top and Valley View mining claims, owned by the defendant herein, constitute a portion of the Butler group of mines, for which defendant has applied for a patent. These locations were made by the same person, and the lines as made by the original locator overlapped each other. The discovery shaft on the Silver Top was within the lines of that location as made, and was also within the lines of the Valley View. The claims were located on the same day, the Valley View being first. The overlapping lines of the conflict between these claims were afterwards agreed upon and adjusted by the respective locators and owners thereof. The Valley View changed its northern line, so as not to include the discovery shaft of the Silver Top. The adjustment as made did not change any of the boundaries of the Silver Top in so far as the portion of the ground in dispute in this action is concerned. These claims were among the pioneer locations in Tonopah, and were located prior to the Stone Cabin, owned by complainant. Held, that the Silver Top is a valid location, that the change in the overlapped lines of the Valley View affected only the rights of the owners of those claims, and that the subsequent locator of other adjoining claims was not injured thereby, and is not in a position to complain or take advantage of any overlapping of the lines between the Silver Top and Valley View.

**2.** SAME—DISCOVERY OF MINERAL OUTSIDE OF DISCOVERY SHAFT.

It also appears that other discoveries of a mineral lode were made by the locator of the Silver Top at different places within the lines of that claim, and outside of the ground covered by the Valley View location, within the 90 days allowed him to perfect and complete his location, before the Stone Cabin was located. The Stone Cabin cannot for this reason claim any priority over the Silver Top.

**3.** SAME—BOUNDARIES—MOVING OF CORNERS.

Where, as shown by a preponderance of the evidence, the corner of a mining claim was established and marked by a monument and stake when the claim was located, and had never been moved by the owner, he or his grantees are entitled to a patent to the boundary so marked, where it can be ascertained, as against a subsequent locator of a conflicting claim, who, with knowledge of the prior claim, made no attempt to ascertain its lines, although such corner may have been moved by others.

**4.** SAME.

Under the facts and principles of law applicable to this case, *held*, that defendant has established a better right to the ground in controversy.

Suit in Support of Adverse Claim to Mining Ground.

Dickson, Ellis & Ellis and Key Pittman, for complainant.

W. E. F. Deal, Kenneth M. Jackson, and Campbell, Metson & Campbell, for defendant.

HAWLEY, District Judge.   This is a suit brought in support of an adverse claim made by complainant, as the owner of the Stone Cabin claim, against the application for a patent made by the defendant to consolidated claim No. 2,012, embracing eight mining claims, for the purpose of determining which of the parties has the better right to the mining ground in controversy, and is one of the three suits mentioned in case No. 734 (125 Fed. 389), to which the diagram embodied therein applies, and to which reference is here made.   The portion of the ground in controversy in this suit is marked in yellow upon the northerly portion of the Stone Cabin mining claim, as delineated upon the diagram.

It is alleged in the complaint—

"That the defendant above named, claiming to be the owner of an alleged adjacent mining claim called the 'Silver Top,' on or about the 10th day of January, 1902, wrongfully and unlawfully caused said alleged Silver Top mining claim to be so surveyed as to cross upon and overlap the said Stone Cabin mining claim and lode, and include a portion thereof described as follows: 'Beginning at corner No. 1 of the said alleged Silver Top mining claim as surveyed for patent, being mineral survey No. 2,012, from which the section corner at the southeast corner of section 35, township 3 north, range 42 east, Mount Diablo Base and Meridian, bears south, 25° 17' east, 1,369 feet distant, and running thence on a true course north, 89° 55' west, 540.6 feet, along the southerly side line of the said alleged Silver Top lode, as surveyed, to its intersection with the westerly end line of the Stone Cabin lode; thence on a true course north, 3° 26' east, 208.1 feet, to corner No. 7 of the said Stone Cabin lode; thence on a true course south, 86° 32' east, 507.8 feet, along the northerly side line of the said Stone Cabin lode to its intersection with the easterly end line of the said alleged Silver Top lode as surveyed (survey No. 2,012); thence south, 6° 49' east, on a true course, 179.1 feet, to corner No. 1 of the said alleged Silver Top lode as surveyed, the place of beginning; containing 2.317 acres.' "

The Stone Cabin claim was located by Edward Clifford, Sr., on the 8th day of October, 1900, as the east extension of the Valley View

claim in the Butler group of mines. His certificate of location was signed and recorded December 22, 1900, and, among other things, contains the following statement:

"The locator hereby further certifies that he located and now claims 1,500 linear feet along the course of the vein or lode extending from the point of discovery and location, a monument upon the ground 1,500 feet in an easterly direction, together with 300 feet on each side of the center of the ledge, lode, or vein, in a northerly and southerly direction. That the general course of the vein is east and west. The discovery cut is situated 10 feet east of the discovery monument, and its dimensions are 15 feet in length along the ledge, cutting it 10 feet deep from the surface. The location and description of each corner of the claim, with the markings thereon, are as follows, to wit."

And then a description is given by metes and bounds from monument to monument, which includes the yellow portion embraced therein.

The Silver Top claim was located by J. L. Butler, for J. H. McCormack, August 30, 1900. He had previously located the Burro and the Desert Queen and the Valley View in the Butler group of mines, and he believed there was some vacant ground lying between the Burro and the Desert Queen, on the north, and the Valley View, on the south; and his object in locating the Silver Top was to include such vacant ground, in order to prevent others from coming in and locating the ground between the claims he had already located, and also to include some vacant ground to the east. This accounts for the overlapping of the lines of the Silver Top over a portion of the Burro, Desert Queen, and Valley View. Mr. Butler, in his testimony, stated that the Silver Top was the last claim located in the Butler group of mines; that there were several ledges on the claim; that he discovered mineral-bearing rock in several places; that the croppings that he located cropped out a few hundred feet—"a pretty solid ledge—rather a low-grade quartz"; that he found several stringers above there "that we afterwards leased, and some ore was taken out." He described the discovery work done upon the claim "in the shape of a trench along 'one of the ledges," ten feet long, three or four feet wide; that he followed the ledge several feet, and struck "some pretty solid quartz" in place; that the location work was done within the boundaries of the Silver Top location—"about the center of it, I think." He testified to a conversation which he had with Edward Clifford, Jr., about October 8, 1900, which was after he had located the Silver Top. "I told him about the end of the Valley View I had located, * * * on the brink of a wall, there was nothing showing to the east, and to put his location just on there so it would stand side of mine, and to claim east up towards the low country there towards the Middle Buttes, the valley, and he would probably get a whole claim, not to swing in toward the big mountain as that ground was claimed." That the big mountain he referred to was Mt. Oddie, to the east and northwest. Upon cross-examination he said that the Valley View was located a few hours before the Silver Top, but that the Silver Top was monumented first; that "the richest ore in all Tonopah" was taken out of the Silver Top claim; that there was a space of vacant land between the Valley View and Burro at the time

he located the Silver Top of about "four to six hundred feet"; that at the time of this location, August 30, 1900, no boundaries had been erected around any of the Butler group of mines.

On the 24th of November, McCormack signed and filed for record his location certificate of the Silver Top, which, among other things, contains the following statement:

"This claim lies between the Valley View claim, on the south, and the Burro and Desert Queen claims, on the north. The locator hereby certifies that he located as above and now claims 1,500 linear feet along the course of the vein or lode, extending from the point of discovery and location, a monument upon the ground 1,250 (feet) in an easterly and 250 feet in a westerly direction, together with 300 feet on each side of the center of the ledge, lode, or vein, in a northerly and southerly direction. That the general course of the vein is about east and west. The discovery cut is situated about 650 feet easterly from the location monument, on the ledge, and its dimensions are 10 feet long, and about 3 feet deep, showing ore and quartz in place. The location and description of each corner of the claim, with the markings thereon, are as follows, to wit."

And then follows a specific statement, by metes and bounds between monuments, of certain ground, which includes the yellow strip marked on the Stone Cabin claim.

The dotted dark line on the diagram commencing at point 1 on the southeast corner of the ground in yellow (claimed by the defendant as the southeast corner of the Silver Top), and running westerly to point 2 on the east end line of the Valley View, and continuing westerly to point 3 (as the southwest corner of the Silver Top), marks the southerly side line of the Silver Top as originally located.

The record in this case is voluminous. It contains 520 typewritten pages. The witnesses in this case were called upon not only to testify to the lines, boundaries, monuments, and pegs, when and where made, built, posted, and driven upon the ground claimed by the Stone Cabin and Silver Top, but once more to invade the territory traveled over in the Valley View, Pyramid, and Wandering Boy locations in cases No. 734 (125 Fed. 389) and No. 735 (Id. 400). In the light of what was said in the opinion in case No. 734 touching the admissions and proofs as to locations, discovery, posting of notices, building of monuments, performance of annual labor, etc., it would be an endless and useless task to attempt to review all the testimony of the witnesses. It would only tend to bewilder, instead of explain, the real issues involved in the present contest.

The Gayhart survey, as stated in No. 734, included about 30 feet of ground east of the original east end line of the Valley View. The application for the patent adheres to the original line. It appears from the testimony that at one time, when the Cliffords had bonded the Stone Cabin, there were conversations had with Butler in regard to these lines, and the whole thing was settled by Butler (with the consent of others interested with him) voluntarily withdrawing any claim on the part of the Valley View to the ground east of the original end line.

The conflict in this case arises upon somewhat different grounds from those presented in No. 734 and No. 735; but in this, as well as the other cases, the Valley View original location, certificate of loca-

tion, and the additional amended certificate of location, and Gayhart's survey, with the lines and monuments marked under each upon the ground, furnish the groundwork for the theories advanced by complainant, and throughout the record, in all of the three cases, will be seen the footprints of an effort on the part of the complainant to confine the Valley View to the limits of the lines and monuments embraced within the original location.

It will be noticed by looking at the diagram in No. 734 that the Silver Top discovery shaft was sunk at the point "S. T. Dis. Shaft," which is south of the original north line of the Valley View, and north of the red line designating the north line of the Valley View, as drawn down by the Gayhart survey.

1. The contention of the complainant herein is that it is the owner of the entire area of the Stone Cabin claim embraced within its exterior boundaries as marked on the diagram; that the location of the Stone Cabin is prior in time, as a matter of law, as against the Silver Top location. Counsel for complainant, in his argument, said:

"The first contention and postulate we make is that the Silver Top so-called location never for an instant of time was valid, that it always was invalid, that it was void ab initio, and that no right immediately thereafter or since, by anything that has transpired, could flow from it."

This broad statement is sought to be sustained upon the ground that the proofs show that the Silver Top location notice and discovery shaft were within the original boundaries of the Valley View, which was located prior to the Silver Top; and, even if it be conceded that the monuments of the Silver Top were, as testified to by some of the witnesses, erected prior to the monuments of the Valley View, the Silver Top would not be entitled to any priority as against the Valley View. Under these conditions, it is claimed that the owners of the Silver Top could not initiate any legal right to the ground by virtue of their discovery, which was made, as shown by the testimony, within the boundary lines of the original location of the Valley View; that, the owners not having acquired any legal rights by reason of the acts done by them under the Silver Top location, the ground in conflict was not and could not be appropriated by them, and was open, public, mineral land, subject to location, at the time that Clifford, Sr., made the Stone Cabin location; and that, for the reasons stated, priority attaches, in law, to the Stone Cabin as against the Silver Top. If the premises as stated by complainant are correct, then the conclusions drawn by counsel would certainly follow. But are the premises correct? Was the Silver Top location void?

The defendant is the owner of the Butler group of mines, consisting of eight contiguous mining claims. Whatever rights the locators possessed at the time of the conveyance, the defendant is entitled to. No more, no less. It stands in their shoes. It so happens, as is often the case, that the lines of the claims at some places overlapped each other. This was particularly so with the Silver Top and the Valley View. The application for a patent, in so far as it relates to the Silver Top, does not embrace any more ground than was in its original location. The government is not concerned as to where the

location monument, the discovery shaft, or boundaries were, unless the application for a patent embraces more ground than the law allows. The defendant, being the owner of both the Valley View and the Silver Top, had the right to adjust the lines in its application for a patent. It makes no difference to the government whether the lines of these two claims overlapped each other or not, provided the land for which the application for a patent is made is all within the boundary lines of the two claims as located.

In determining the conflict between counsel as to the effect to be given to the established facts, and of the application of the law in regard thereto, we must keep in mind that the Valley View and Silver Top were located prior to the location of the Stone Cabin. The locators of the Valley View and the Silver Top were the pioneers in Tonopah. They were unhampered by any outsiders in running their lines, and selecting the ground they deemed advisable to locate. One man controlled the whole thing. He was the original discoverer. He had the pick and choice of all the locations constituting the Butler group of mines. He was not called upon to look for notices, stakes, or monuments. He was, in these respects, unfettered. The ground was all vacant. All that he had to do was to select the ground which he desired to locate, and those who came after him were called on to respect his locations, not to disregard them. He was not monarch of all he surveyed. He was limited by the mining laws, national and state. He could not include within a claim more ground than he was entitled to, and he was compelled to complete and perfect his locations within the time designated by statute. His location, when completed, was at his own peril. If he mistook the true course of the lode or vein, he and those purchasing from him would be bound by it. But the fact of priority of location is one of great importance. It cannot be ignored. If the acts he had performed or caused to be performed were valid, subsequent locators were bound thereby, and could not intrude upon the ground he had lawfully taken up. They were called upon to notice what had been done by him, and others acting with him, and the law required them to ascertain where the lines of his location were, and they were held to a knowledge of his rights, in so far as the time of marking his boundaries was concerned. If his initial steps were valid, the right to complete his location within the time allowed by law could not be interfered with. If he had made mistakes in running the lines, or committed any errors in the sinking of his discovery shaft, or running cuts upon his ground to find the mineral therein contained, he had 90 days after his location, by virtue of the law of this state, to correct such mistakes or errors, and those who came after him would be bound thereby. It does not lie in the mouth of complainant to declare that the Valley View was prior in point of location to the Silver Top, and that the owner of the Valley View had a perfect title to the ground where the discovery shaft was sunk. The fact that the locator of the Silver Top sunk his discovery shaft upon ground overlapped by the Valley View was a matter which might have been taken advantage of by the locator of the Valley View in any conflict that might have arisen as to the overlapping ground between the two claims, and the respective claimants of each thereto.

But this discovery shaft was, as a matter of fact, sunk upon the ground as located by the Silver Top. The lines of the conflict between those two claims were agreed upon and adjusted by the locators of those two claims. The change in the overlapped lines of the Valley View and Silver Top affected only the rights of the owners of those claims. No adjoining locator of other ground was affected thereby, or could complain or take advantage thereof, because he was not injured thereby. The adjustment as made between those claims did not change any of the boundaries of the Silver Top in so far as the portion of the ground marked in yellow is concerned.

In Little Pittsburgh C. M. Co. v. Amie M. Co. (C. C.) 17 Fed. 57, the court, after stating the contention of counsel, said:

"This position appears to be to the effect that one who owns a mining claim must at all events hold onto his discovery shaft until he has obtained a patent for his claim. If he yields it to another in any way, by conveyance or otherwise, he thereby abandons the rest of his claim. I do not see upon what principle such a conclusion can rest. After a claim has been properly located, the owner of it may sell any part without prejudice to his right to hold the remainder. He may dispose of it by gift or grant in any way that seems proper to him. What was done in this instance by the Winnemucca parties and the Little Pittsburgh parties is not stated. Whether the Winnemucca parties yielded voluntarily to the Little Pittsburgh people, or made sale to them, or in what way they disposed of their interest, if they had any, in this claim, is not stated. But I do not think that can be material. Any concession that they may have made to the Little Pittsburgh people is to them only, and is not available to any other person. It has been decided, it is true, in the Supreme Court of this state, and in this court also, that a location may not be made by a discovery shaft upon another claim which has been previously located, and which is a valid location, but that doctrine has nothing to do with the point in controversy here. For all that appears, the Winnemucca may have been the better location, and it may have been sold by the Little Pittsburgh parties, or disposed of in some way. The mere fact that a part of it was transferred to the Little Pittsburgh parties is not enough to defeat the right of the locators to other portions which were not sold, disposed of, or surrendered."

2. There is an additional answer to the contention of complainant. The testimony of Mr. Butler shows that rock in place, containing mineral, was discovered in different places within the limits of the Silver Top location; that there were several ledges on the claim, all of which were discovered by him prior to the location of the Stone Cabin claim. Conceding, as we have throughout this case, that the location of a mining claim based exclusively on a discovery of mineral within the limits of another existing and valid location is void; that the location as made by the locator, as was said by the court in Gwillim v. Donnellan, 115 U. S. 45, 50, 5 Sup. Ct. 1110, 1112, 29 L. Ed. 348—

"Must be one which entitles him to possession against the United States, as well as against another claimant. If it is not valid as against the one, it is not as against the other. The location is the plaintiff's title. If good, he can recover. If bad, he must be defeated. A location on account of the discovery of a vein or lode can only be made by a discoverer, or one who claims under him. The discovered lode must lie within the limits of the location which is made by reason of it. If the title to the discovery fails, so must the location which rests upon it."

But this rule does not apply to a case like the present. If the Valley View had obtained a patent in accordance with the lines of its original

location, including the discovery shaft on the Silver Top, the loss of the discovery shaft would not vitiate the entire Silver Top location, because mineral was found and a discovery thereof made within the undisputed limits of the location within the 90 days allowed the locator thereof to perfect his location, and before the Stone Cabin was located. Such a state of facts would not bring this case within the rule announced in Gwillim v. Donnellan, supra, or of any of the cases cited by complainant.

In Silver City G. & S. M. Co. v. Lowry, 19 Utah, 334, 57 Pac. 11, the court discussed this question at length, citing all the cases, and drawing the distinctions existing between them as to the facts. It was there held that where the original discoverer of a vein upon which a mining location is based is included within the surface boundaries of a junior location, which goes to patent without protest from the owners of the prior location, but before such patent a new discovery has been made on the prior location, without the boundaries of the junior location as patented, and within the surface boundaries of the prior location as originally located, and development work is being there prosecuted in good faith by the owners of the prior location, their claim is valid and holds as to all ground not included in the patent of the junior location, notwithstanding the loss of the original discovery. That case was appealed to the Supreme Court of the United States, and there affirmed upon another point, without passing upon the question here discussed. Lowry v. Silver City G. & S. M. Co., 179 U. S. 196, 21 Sup. Ct. 104, 45 L. Ed. 151. The views expressed by the Supreme Court of Utah are in accord with the decisions of the Land Department. Secretary Teller, in a letter to Commissioner McFarland, April 11, 1882, said:

"Three questions present themselves in connection with the facts recited: (1) Did the waiver of the discovery shaft and the portion of the lode within the Kangaroo survey, by failure to file an adverse claim, have the effect to vitiate the entire Metropolitan location, and bar an application for any part of the same? * * * On the first point, I am of the opinion that the development and possession of the lode, so far as it runs upon public land, was not interfered with in any manner by the waiver of a portion, even though the original discovery shaft was included in the portion disposed of. The continued possession and working of such outside portion under the original ownership and location ought not to be held as forfeited while the good faith of the owner toward the United States is not impaired, and opportunity should not be given to a stranger to appropriate under United States laws the property and improvements which he has acquired and made upon a good and sufficient location properly asserted at the time of his original discovery."

The yellow portion of the ground in the Stone Cabin was within the lines of the Silver Top as originally located, and marked by stakes and monuments, and the locator of the Stone Cabin must be confined to and bound by those lines, unless there are other grounds which can be found in the evidence which would entitle him to include the same in his location.

3. The other contention on the part of the complainant is that the boundary lines of the Silver Top have been so moved, or are so uncertain, that it is impossible to establish the original corners of the Silver Top. This contention is principally confined to the post and monu-

ment at the southeast corner of the Silver Top, viz., at the southeast corner of the ground marked in yellow on the Stone Cabin claim. This contention involves the question whether the Silver Top claim was so monumented and marked that the boundaries could be readily traced.

At the trial there appeared to be much confusion in the testimony in regard to the S. E. corner monument and stake. Mr. Edward Clifford, upon his cross-examination, testified: That at the time he monumented the Stone Cabin he knew that the Silver Top—one of the Butler group of mines—had been located. That, in monumenting the north line of the Stone Cabin, at the north side center he noticed a stake of the Silver Top inside his lines, and went to it and looked at the marks thereon. "I think it stated the southeast corner of the Silver Top." He understood "it was a stake or monument marking the southeast corner of the Silver Top." That this stake was about 250 feet in a westerly direction—"a little bit south of west"—from his north side center, and about 30 feet south of the north line of the Stone Cabin. In another portion of his testimony he stated that the southeast corner of the Silver Top had been moved south from the point where he first saw it, but he did not state that he saw it moved, or that he knew by whom or when it was moved. The effect of the testimony of Edward Clifford, Sr., and of Edward Clifford, Jr., is, that they never saw any stake or monument of the Silver Top at the southeast corner of the ground marked in yellow.

Mr. Oddie, on behalf of defendant, testified that he saw the original notice of the Silver Top on the ground; that he saw the monuments on the ground before the filing of the certificate of location; that he saw the southeast corner; "that it was marked with a stake, two by four. I remember that monument marked 'Southeast Corner Silver Top.'" Further, he said, "I built up that southeast corner monument and marked the stake myself," some time prior to November 24, 1900. His attention was called to Booker's survey, and he said:

"If this is the correct southeast corner of Mr. Booker's survey, 'S. E. C.,' I should say that the old monument is in * * * about the same place it is marked here. * * * The monument * * * that I rebuilt is westerly and a trifle southerly of the present Booker monument," about 30 or 40 feet.

Butler testified that between the 8th and 10th of October, 1900, there was a slab about 5 feet high put in place to mark the southeast corner of the Silver Top, and that a dirt monument was also built there at that time by Mr. Oddie.

W. C. Gayhart testified that he made a survey of the Silver Top in March, 1901; that he found a stake at the southeast corner marked "S. E. Corner Silver Top"; that at this point he had a monument built four feet in diameter, three feet high, of earth and sage brush; that Mr. Butler showed him the corner where the stake was found. Egan, the mining recorder, who carried the pegs, and Miles, who assisted in building the monuments, corroborate the testimony of Mr. Gayhart.

Several witnesses were called by complainant in rebuttal of the defendant's witnesses, and testified with reference to the southeast cor-

ner. Blood, who was on the ground in conflict in the month of August, 1901, testified that he did not think there was any monument at the point marked "Southeast Corner Silver Top." Replying to the question whether he at that time saw any monument on the Stone Cabin claim marked "Southeast Corner Silver Top," he said:

"I saw a monument about 150 feet to the north and east of where we wanted to sink a shaft on the Stone Cabin. Q. Were there any marks in that monument? A. There was a peg, marked 'S. E. Corner Silver Top,' 150 feet easterly and northerly of the point marked 'Dickson Shaft'" (on the diagram in case No. 734).

Upon his cross-examination, upon being asked whether he was positive there was not a monument at the southeast corner at the point designated on the diagram, he answered: "I never saw one. I didn't see one there."

Mr. Dewey testified that he was on the Stone Cabin ground in July, 1901, and saw a monument about 100 or 150 feet north of the Dickson shaft, and that he did not think there was any monument at the point marked on the diagram "S. E. Corner Silver Top." On cross-examination: "Q. You simply mean to say if there was a monument there you didn't see it? A. That is what I mean to say."

Mr. Sullivan testified that he saw a monument at one time which he judged was "from twenty-five to thirty feet inside of the lines of the Stone Cabin ground," marked "Southeast Corner Silver Top."

J. O'Toole was also called by complainant, and testified as follows:

"Q. Mr. O'Toole, I will ask you to state whether or not at the time you sunk what is designated upon this plat as the Dickson shaft there was a monument to the south and east of the Dickson shaft, now known as the southeast corner of the Silver Top mining claim? A. There was a monument of some kind over there. I don't know who it belonged to, or what it was. I understood it was the center of the Stone Cabin. I don't know. Q. The point I am referring to is the monument to the south and east of what is known as the Dickson shaft. Was there a monument there or not? A. There certainly was."

He further testified that Mr. Booker was surveying the ground there in October, 1901, and had three men with him; that there was a monument at that time about 200 feet northeast of the Dickson shaft; and that "Booker's employés moved the monument in about sixty or eighty feet south." He did not know "what monument it was."

Mr. Booker was recalled by defendant:

"Q. I will ask you to state to the court whether or not, at any time when you were surveying that ground for any purpose, you, or any person under you, moved the southeast corner of the Silver Top to the south? A. No, sir. Q. Did you ever move the southeast corner in any of your surveys anyway? A. No."

Mr. Healy, the superintendent of complainant, on behalf of complainant, testified that he had a conversation on or about the 1st day of June, 1902, at his office in Tonopah, with Mr. Miles.

"Q. I will ask you to state whether or not at that conversation Mr. Miles stated to you that, at the time he assisted Mr. Gayhart in making the survey of the Silver Top claim, that in assisting in that survey he moved the south-

125 F.—27

east corner of the Silver Top mining claim southerly a distance of fifty or sixty feet? A. He did."

Mr. Miles, on behalf of defendant, in rebuttal, testified:

"Q. Did you ever at any time tell Mr. Healy, in his office in the town of Tonopah, that you had assisted in moving the southeast corner of the Silver Top claim fifty or sixty feet to the south? A. I did not."

Mr. Clifford testified that Oddie admitted to him in Carson that he had removed the stake at the southeast corner to the south. Mr. Oddie was called on behalf of defendant, and testified that he heard this testimony of Mr. Clifford.

"Q. Did you at any time since you have been in Carson, or ever, tell Mr. Clifford, Sr., that the monument which we claim to be the southeast corner of the Silver Top had been moved to the south? A. I never told him anything of the kind. Q. Did you ever tell him anything more than that which you testified to on day before yesterday? A. No, sir."

Comment upon this testimony is unnecessary. It explains itself. The testimony offered by defendant is clear and positive as to the monument at the southeast corner of the Silver Top. The testimony of the complainant is negative. Its witnesses never saw it. There is no satisfactory explanation about the "peg" seen by Clifford and others in a northeasterly direction from the Dickson shaft, marked "S. E. Corner Silver Top." How it got there is apparently a mystery. It is the only peg in all of the cases that is not accounted for or explained. There is nothing in the testimony showing that the owners of the Silver Top ever put it there or removed it therefrom. The burden of proving the moving of the corner stake of the Silver Top is cast upon the complainant, and it has failed to establish it by any preponderance of the testimony.

One thing in this case is made certain, and that is that the original southerly line of the Silver Top location included the ground in conflict in this case. There was never any change made in that line anywhere along the ground in dispute. The southeast corner of that line was monumented at the time the Silver Top was located. The patent asked for by defendant by reason of the Silver Top location does not call for any ground that was not included within its original lines. The southeast corner of the ground in yellow is 600 feet southerly from the northeast corner of the Silver Top location as originally located. Under these undisputed facts, it is apparent that the locators of the Silver Top could not be legally deprived of their rights by any "juggling" of the post and monument, which was at the southeast corner of that claim, by strangers. This question is referred to in case No. 734, and is disposed of by the decision of this court in Book v. Justice Min. Co., 58 Fed. 106, 114. Moreover, Mr. Clifford, when he located and monumented the Stone Cabin claim, paid no attention to the stray peg marked "S. E. Corner Silver Top." He included ground to the north of it, without making any inquiry of the locators of the Silver Top claim in regard to it. He could readily have ascertained where the claimed line was. He made no effort to do so, although he knew, as before stated, that the Silver Top claim had been located.

In Eilers v. Boatman, 3 Utah, 159, 164, 2 Pac. 66, 69, a contention was made upon similar grounds to the one under consideration. In discussing it, the court said:

"The proofs show that the plaintiff, at the time he made his location of the Virginia, was not, to say the least, a very anxious inquirer as to the boundaries of the Nabob, for at that time he found the owners of the latter claim at work in a shaft at or near their discovery point, and, without making any inquiry as to the direction or extent of their claim, he completes his location, taking in and including the very ground upon which the defendants were at the time actually working, and which is included in the conflict area. It is sufficient to give a right to the occupants of mining ground on the government domain, which the courts will protect, to establish by evidence its appropriation by means which are a substantial compliance with the law upon that subject, and which, in view of the surrounding circumstances, will give notice to those who have a right to know that the particular mining ground is subject to the dominion and control of some private claimant. * * * The same preponderance of testimony shows that the boundaries of the Nabob claim, as surveyed for a patent, are substantially the same as those described in the location, and marked on the ground at the time the location was made. There was testimony showing a somewhat promiscuous marking of trees with the word 'Nabob,' in various directions, and entirely off from the ground claimed and located by the defendants. The clear inference to be drawn from all the testimony is that this marking was done by some party unknown to the defendants, * * * and would indicate an attempt to confuse the boundaries of the Nabob claim. The finding of the court 'that the survey of the Nabob mining claim, as set forth in the answer, is substantially in conformity to the boundaries thereof as located,' is abundantly sustained in the evidence."

The proceedings in this case are in aid of the Land Department of the government, to determine which of the parties to this suit, as against the United States, has the better right to the mining ground in controversy. Tonopah Fraction M. Co. v. Douglass, 123 Fed. 936. Under the facts in this case, as established by the weight of the evidence, and the principles of law applicable thereto, this court is of opinion that the defendant has established the better right to the area in dispute. Let a decree be entered in its favor, with costs.