## DOE v. WATERLOO MIN. CO.

### SAME v. SAME.

(Circuit Court, S. D. California. April 3, 1893.)

### Nos. 160, 161.

1. MINES AND MINING—CONFLICTING CLAIMS—PRIORITY—PATENTS.

N. discovered a metal-bearing lode, and on the same day erected a monument and posted a notice stating that he had "this day located and claimed" for mining purposes 1,000 feet northwesterly and 500 southeasterly therefrom, with 300 feet on each side, and claiming 20 days within which to complete his boundary monuments. Eleven days thereafter other prospectors located and set up the boundary monuments of a conflicting claim, and in so doing saw N.'s notice at a distance of 150 feet, but did not take

the trouble to go and read it. Subsequently, but before the expiration of the 20 days, transferees of part of the interest of N. (who was prevented from doing so himself by sickness) set up the boundary monuments of N.'s claim. *Held* that, in the absence of state statutes or mining rules fixing the time within which the exterior boundaries should be marked, 20 days was a reasonable time, and that N. was entitled to a patent as against the subsequent locators. Erhardt v. Boaro, 5 Sup. Ct. Rep. 560, 113 U. S. 527, followed.

2. SAME—BOUNDARY OF CLAIM—EVIDENCE.
One of two locators of a mining claim, while they were busy in marking the boundaries thereof, set up a corner monument which the other did not see at that time, although he wrote a notice to be put thereon. Three months later, as they went over the ground together, the former pointed out a monument bearing the notice, and stated that it was the monument he had set up when marking the boundaries, and that he had affixed the notice to it at that time. The monument was on a ledge of marked peculiarities, easy to be remembered. The man who set up the monument died before trial, and these facts were sworn to by the other locator, who also testified that he had pointed out this monument to the surveyor. The latter testified that the monument so pointed out determined the corner of the claim as represented by him on the map. *Held* that, in the absence of reasons for doubting this testimony, it was sufficient to prove that the monument had not been moved after it was first set up, and before the making of the survey.

In Equity. Suits in a superior court of California by Doe against the Waterloo Mining Company, under Rev. St. §§ 2325, 2326, to determine the right of possession of mining lands for which conflicting applications for patents had been filed. Defendant removed the causes to this court. Demurrers to the complaints were overruled, and it was held that the suits were on the equity side of the court. 43 Fed. Rep. 219. The causes are now heard on the merits. Decree for complainant in cause 160, and for respondent in cause 161.

R. S. Mesick & C. J. Perkins, for complainant.
A. H. Ricketts, for defendant.

ROSS, District Judge. These cases were argued and submitted together. Case No. 160 originated out of an application made by the Waterloo Mining Company in the United States land office at Los Angeles for a patent for a certain mining claim called the "Josephine," situate in the Calico mining district, in San Bernardino county, of this state, and a protest against such issuance, filed by the complainant, Doe; and case No. 161 had a similar origin in respect to an application by the same company for a patent for a mining claim called the "Red Jacket," situate in the same mining district. Contests having thus arisen between the respective parties in the land office, these suits were commenced by the contestant in one of the superior courts of the state, to determine the rights of the parties respecting the disputed premises, and the suits were, on motion of defendant, transferred to this court. Here the court was called upon to determine the precise nature of the suits in an opinion reported in 43 Fed. Rep. 219. The suits were subsequently brought to issue, evidence on behalf of the respective parties taken, and, after argument, submitted to the court for decision.

It appears that on the 26th of March, 1881, a man named Newbill discovered a vein of metal-bearing rock in the mountains of Calico, which he claimed, and named the "Red Jacket," on which he on the same day erected a monument, and posted a written notice on a stick placed therein, substantially as follows:

"I have this day located and claimed fifteen hundred feet on this lead or lode running one thousand feet northwesterly and five hundred feet southeasterly, with three hundred feet on each side, for running [mining] purposes. I also claim the legal time of twenty days to complete my boundary monuments."

On the 6th day of April following T. C. Warden and G. W. Yager went prospecting in the same vicinity, and on that day they located a claim called the "Mammoth," so marking its boundaries that they could be readily traced on the ground. The notice posted by Newbill was placed in a conspicuous place, and was in fact seen by Warden and Yager, although Warden's testimony is to the effect that they did not take the trouble to go to read it, though it was within 100 or 150 feet of where they stood when making the location of the Mammoth claim. The latter claim was so located by Warden and Yager as to take in a part of the ground that would be included by embracing within the boundaries of the Red Jacket 1,000 feet along the vein northwesterly and 500 feet southeasterly from the discovery monument and notice erected by Newbill, with 300 feet on each side thereof. Those boundaries were established by Parks, Wallace, and Farrell on April 12, 1881, in pursuance of the notice posted by Newbill, and for and on behalf of Newbill and themselves; Newbill, by reason of sickness, having given them an interest in the Red Jacket claim in consideration of their services in completing his location. The boundaries thus established by Parks, Wallace, and Farrell were, as a matter of course, in part within those of the Mammoth as established by Warden and Yager on the 6th of April. The complainant, Doe, is the successor in interest of Warden and Yager, and the defendant, Waterloo Mining Company, the successor in interest of Newbill and his associates. Which of these parties has the better right to the piece of ground covered by both locations, is the question for decision in case No. 161. The question, I think, is of easy solution.

Newbill was the first discoverer of the ground in question. True, upon the day of its discovery—March 26, 1881—he did not establish monuments around the exterior boundaries of the claim, and those monuments were not marked at the time Warden and Yager located the Mammoth claim, on the 6th of April, 1881. But the notice on the stake placed by Newbill at the point of his discovery notified Warden and Yager, and every one else, that Newbill had located and claimed the vein for 1,000 feet in a northwesterly direction and for 500 feet in a southeasterly direction from the discovery stake, with 300 feet on each side thereof. A less definite notice was held sufficient to protect the locator against the acts of subsequent locators by the supreme court in the case of Erhardt v. Boaro, 113 U. S. 527, 5 Sup. Ct. Rep. 560. There the discoverer on the day of discovery designated the vein or lode as the "Hawk

Lode," and posted at the place of the discovery a notice in writing as follows:

"Hawk Lode.

"We, the undersigned, claim fifteen hundred feet on this mineral-bearing lode, vein, or deposit.

"Dated June 17, 1880.

"Joel B. Erhardt, four fifths.
"Thomas Carroll, one fifth."

The supreme court, in reviewing the action of the court below, said:

"As seen by the statement of the case, the court below, in its charge, assumed that the notice on the stake, placed by Carroll at the point of his discovery, contained no specification or description of the ground claimed by the locators, because it did not designate the number of feet claimed on each side of that point, or in any direction from it. The court accordingly instructed the jury that the notice was deficient, and under it the locators could not claim any more than the very place in which the stake was planted, and that elsewhere on the same lode beyond the point of discovery any other citizen could make a valid location. In this instruction we think the court erred. The statute allows the discoverer of a lode or vein to locate a claim thereon, to the extent of fifteen hundred feet. The written notice posted on the stake at the point of discovery of the lode or vein in controversy designated by the locators as 'Hawk Lode,' declares that they claim fifteen hundred feet on the 'lode, vein, or deposit.' It thus informed all persons subsequently seeking to excavate and open the lode or vein that the locators claimed the whole extent along its course which the law permitted them to take. It is, indeed, indefinite in not stating the number of feet claimed on each side of the discovery point, and must, therefore, be limited to an equal number on each side; that is, to seven hundred and fifty feet on the course of the lode or vein in each direction from that point. To that extent, as a notice of discovery and original location, it is sufficient. Greater particularity of description of a location of a mining claim on a lode or vein could seldom be given until subsequent excavations have disclosed the course of the latter. These excavations are to be made within sixty days after the discovery. Then the location must be distinctly marked on the ground, so that its boundaries can be readily traced; and within one month thereafter—that is, within three months from the discovery—a certificate of the location must be filed for record in the county in which the lode is situated, containing the designation of the lode, the names of the locators, the date of the location, the number of feet claimed on each side of the center of the discovery shaft, the general course of the lode, and such a description of the claim, by reference to some natural object or permanent monument, as will identify it with reasonable certainty. Rev. St. § 2324; Gen. Laws Colo. §§ 1813, 1814. But during the intermediate period from the discovery of the lode or vein and its excavation a general designation of the claim by notice, posted on a stake placed at the point of discovery, such as was posted by Carroll, stating the date of the location, the extent of the ground claimed, the designation of the lode, and the names of the locators, will entitle them to such possession as will enable them to make the necessary excavations and prepare the proper certificate for record. The statute of Colorado requires that the discoverer, before a certificate of location is filed for record, shall, in addition to posting the notice mentioned at the point of discovery, sink a shaft upon the lode to the depth of at least ten feet from the lowest part of such shaft under the surface, or deeper, if necessary, to show a defined crevice, and to mark the surface boundaries of the claim. Before this work could be done by the plaintiff and his colocator, the ground claimed by them was taken possession of by the defendants, the stake at the point of discovery upon which the notice was posted was removed, and Carroll was thereby, and by threats of violence, prevented from re-entering upon the premises and completing the work required to perfect the location and prepare a certificate for record; at least, the

evidence tended to establish these facts. If they existed, (and this was a question for the jury,) the plaintiff was entitled to recover possession of the premises. To the extent of seven hundred and fifty feet on the course of the lode on each side from the point of discovery he and his colocator were entitled to protection in the possession of their claim. They did not lose their right to perfect their location and perform the necessary work for that purpose by the wrongful intrusion upon the premises, and by threats of violence if they should attempt to resume possession. As against the defendants, they were entitled to be reinstated into the possession of their claim. They could not be deprived of their inchoate rights by the tortious acts of others; nor could the intruders and trespassers initiate any rights which would defeat those of the prior discoverers."

So far as the proof shows, there were in the case at bar no mining rules or regulations in existence at the time of the locations in question fixing the time within which locators in the district in question should establish the exterior boundaries of their claims, and there is no statute of California fixing such time. Locators should, under such circumstances, be allowed a reasonable time for that purpose. Such reasonable time had not expired when Warden and Yager went upon the ground on the 6th of April, 1881, and made their location of the Mammoth claim. They then saw, and should have read, Newbill's notice of March 26th, claiming the vein on which it was posted for 1,000 feet northwesterly and 500 feet southeasterly of his discovery monument, together with 300 feet on each side of it, and claiming the reasonable time of 20 days within which to mark the exterior boundaries of his claim. Warden and Yager were thereby apprised that no part of the ground embraced by Newbill's notice was open to location by them, and their act in including a part of that ground was therefore nugatory.

Speaking of a similar notice, the court, in the case of Marshall v. Manufacturing Co., (S. D.) 47 N. W. Rep. 293, said:

"The notice posted notified any one coming within the limits described by that notice for the purpose of making another location that there had been a previous location, and if they attempted to occupy any portion or all of that ground described within the limits of that notice they would be trespassers."

It is suggested that the act of Parks, Wallace, and Farrell in marking the exterior boundaries of the Red Jacket claim on the 12th of April was unavailing, because one of those corners was established within the boundaries of the Mammoth claim as established by Warden and Yager on the 6th of April. To affirm that position would be to affirm that the perfecting of the right initiated by Newbill on the 26th of March could be arrested and defeated by the illegal and void act of Warden and Yager in embracing within the boundaries of the Mammoth claim ground not at the time subject to location. I think it clear that the defendant, Waterloo Mining Company, is entitled to that portion of the mining ground in dispute that is embraced by both the Red Jacket and Mammoth locations, and that complainant, Doe, has no right thereto nor interest therein.

That portion of the ground in dispute involved in case No. 160 concerns only the west end monuments of the Mammoth claim. The evidence does not show any location of the Josephine claim until April 7, 1881, which was the day after the Mammoth claim

was located. But it is contended on the part of defendant that the northwest corner of that claim as now claimed by the complainant, and as is represented by the Lewis map in evidence, is not as originally located, but has been moved within the boundaries of the Josephine claim; thus embracing a part of the ground within that location. The Mammoth claim was located, as has been said, by Warden and Yager, on the 6th of April, 1881. Some of the monuments that marked its boundaries were erected by Yager, one of them by Warden, and two of them by Warden and Yager together. The northwest corner monument was built by Yager, as were the west end center monument and the southwest corner monument. Yager was dead at the time of the taking of the evidence in this case, but Warden was a witness, and I see no reason to doubt the truth of his testimony. He says that while he did not see the west end monuments erected by Yager on the day that the claim was located, he wrote a notice, to be put by Yager in the west end center monument to mark the west end boundary of the claim. and that in July following he went with Yager on the ground; and that Yager then pointed out to him the west end boundaries he had erected, and that in the west end center monument so pointed out was the written notice that he (Warden) had written on the day of the location, April 6, 1881; that the northwest corner monument was peculiar, in that it was built by the side of a cliff of rocks, upon a sort of shelf in a rock projecting out from the cliff, and that this is the corner that he pointed out to the surveyor, Lewis, as the northwest corner of the Mammoth claim, and which Lewis testifies is represented as that corner on the Lewis map; and that the west end center monument pointed out to him by Yager, and in which was at the time the notice which he (Warden) had written, is the same west end center monument that the witness pointed out to the surveyor, and that Lewis testified is represented as that monument on his map. The physical peculiarity of the place where the northwest corner was established, according to the testimony, was such that the witness could not likely be mistaken, and, as has been already observed, I see no reason to doubt the truth of Warden's testimony. I am therefore of opinion that the piece of ground in dispute in case No. 160 was included within the Mammoth claim, the boundaries of which, according to the evidence, were established before there was a location of the Josephine; and, as a result, that the complainant is entitled to that piece of ground, and that the defendant has no right thereto nor interest therein.

Decrees in accordance with these views will be entered.