Bissell, P. J.
Mineral rights are granted to miners by federal statutes. Under the grant expressed miners may go on the public domain, discover lodes and veins and acquire title. Thereunder mining claims have been located in all the states and territories in the Rocky Mountains. The courts of these various states and territories have attempted to interpret and construe them. There is considerable diversity of judicial opinion about them. Their true meaning must ultimately be determined by the supreme court of the United States. We take it, wherever that court has expressed an opinion, it is binding on all courts and the construction which it adopts must be accepted and followed, though there may be decisions of state and territorial courts to the contrary. This is axiomatic under our judicial system. We state the proposition without qualification because we do not wholly follow the decisions of the supreme court of the state which would otherwise be binding on us. We accept and follow the decision of that tribunal to which is committed the power and the duty to interpret federal enactments.
We bespeak a close scrutiny and a careful examination of the statement of facts preceding this opinion which has been prepared by the court. »
Returning to the subject and taking up the questions in the order in which they naturally present themselves, we will advert in the first place to the fact that there were two location certificates filed, to the descriptions found therein and determine therefrom whether singly or together they meet the re *147 quirements of the statute. The first branch of this inquiry necessarily relates to the circumstance that two certificates were offered in evidence. The original one of 1889 and the additional one of 1891. At the outset we hold, following the supreme court of the state, that both ought to have been received. If we concede the position assumed by the appellees, that the first was insufficient, yet it should have been admitted, providing it was followed by one which either supplied what it lacked, or as a whole conformed to the statute. Strepey v. Stark, 7 Colo. 614; Frisholm v. Fitzgerals, 25 Colo. 290. Therein it was determined that when the original certificate of location may be deemed void, an additional one may he filed to correct its defects and both may be put in evidence. These authorities fairly decide this proposition. The question is not an open one, since we find no binding federal decision to the contrary. It is undoubtedly the law and what we may say about it is in no manner intended to attack the doctrine. I do not quite approve the selection of the adjective which the learned justices have used to describe the second certificate. The statute which requires the record permits a second filing (General Statutes, sec. 2400), and thereby it is provided that whenever the locator apprehends that his original certificate is defective or erroneous, or that the law has not been complied with, or he desires to change his surface boundaries, or take in a part of an abandoned claim, he may file an additional certificate subject to the other provisions of the act. I prefer the language of the statute to the language of the opinions. It seems to me that the subsequent certificate should be called an additional certificate, rather than an amended one, and that the use of this adjective more aptly and properly defines the privilege conferred, and certainly suggests a better reason for the doctrine which permits the introduction than any which I have found in the opinions of that distinguished court. In the first ease it is said that it tends to show good faith on the part of the locator, and again, that it offers a means of comparison in respect to description and surface boundaries. Neither of these *148 reasons are to our minds very persuasive because the question of good faith is of very little significance. If the locator wholly fails to properly describe his claim he thereby, as against subsequent and intervening claimants, acquires no rights. This would be true, whether his attempted location was made in good or in bad faith. In another sense, of course, the question of good faith is an important consideration because that is the real basis of the rule which all the courts, as we observe them, have adopted in construing these mining statutes, liberality of construction. This is the only direction in which the matter of good faith cuts any figure. Neither, on the other hand, am I much impressed with the reason suggested that it offers a means of comparison. Under the specific terms of our statute the boundaries need not be the same. The miner is given the absolute right to change his boundaries to take in overlapping and abandoned claims or other territory which has not then been located or occupied! It is to the end that the prospector may cure any defects in his location and conserve and protect the results of his industry, that the authority is given. For this reason, rather than the others, it is our judgment that both certificates, the original and the additional one, ought to be admitted, and we believe if therefrom and thereby, and not necessarily from one alone, but from either one or both together, the necessary statutory steps can be shown to have been taken, the miner thereby establishes an unimpeachable title as against the subsequent claimant. In other words, we believe the law to be that though neither one as a whole may be absolutely correct and in perfect conformity to the statute, yet if in both and from both there may be found and deduced all that the law requires, the statute being otherwise complied with, the miner’s record is complete and his title is perfect.
We now recur to the inquiry whether the original or the additional certificate or both conformed to the statute. Whether the original location certificate was radically defective may be quite a debatable question. We are not so thoroughly well satisfied about it that we concede it, except for the pur *149 poses of the discussion. Following its recitals, it began at the northeast corner post No. 1, and. then following specified courses and distances ran to the center and south end line to posts. It was a parallelogram running due east and west. Assuming the posts to have been put in place, the claim was located on the ground. These posts were in no way tied to any other part of the claim nor to the discovery shaft, nor to any natural object outside the claim. It will be observed however that the discovery shaft was located, and that Sugar Loaf mountain from its highest point bore from the center of it south seventy degrees, thirty minutes east, and that the claim was located in section 11, township 1 N., range 73 west of the 6th principal meridian. Had the shaft been tied to a corner it would doubtless have been good as a tie, and there would have been a sufficient reference to a natural object or permanent monument. Yet, we are not prepared to hold, nor do we say that the posts themselves as set were not permanent objects or natural monuments. Whether when a location certificate makes no other reference it would be adequate, we do not determine. It is wholly unnecessary. There is much in the Hammer ease, hereafter referred to, which would permit an argument supporting the proposition. Conceding for the purposes of the opinion that the first certificate was insufficient, we now recur to the second.
Therein we find a description which starts at an eighteen foot shaft called the discovery shaft; thence a line is run northeasterly 300 feet to the northeast end line; thence from the intersecting point northwest seventy-five feet to the northeast corner post No. 1 set in a mound of stone. Here we have a description started in a discovery shaft eighteen feet deep, and a line drawn to the northeast end line 300 feet long ; then a line northwest seventy-five feet to a post set in a mound of stone. Now if it be true that a stake driven into the ground is one of the most certain means of identification where there is a description of the premises by metes and bounds as decided in the Hammer case, we have got an absolutely perfect description by a reference to a natural object. *150 It may be said, it is quite impossible to know where the discovery shaft is, or to find the point from which the 300 foot line is to start and from which by the, northwest continuation of seventy-five feet we find corner post No. 1. At this point and for the purposes of identification, we recur to the original certificate wherein the discovery shaft is absolutely located, and its position perfectly identified by the highest point of Sugar Loaf mountain, from which bears the center of that shaft seventy degrees and thirty minutes east, the claim itself being located in section 11, T. 1 N., range 73 W. of the 6th principal meridian. We certainly then have in both certificates combined, if not by the last alone, as we shall attempt hereafter to demonstrate, an absolutely perfect description which cannot be mistaken, and wherefrom any engineer could locate and bound the claim. This follows because the courses and distances from post No. 1 set in a mound of stone are all set down in the certificate.
Even though the court might be wrong on this proposition and our position might be disputed, it still remains true the claim was perfectly located by the terms of the additional certificate. At this point we revert to a decision of the supreme court of the state which we shall assume has been overruled by the supreme court of the United States. The appellees rely on it with great confidence, and practically .counsel base their whole argument thereon and attempt thereby to support the ruling of the nisi prius tribunal. Gilpin County Mining Co. v. Drake, 8 Colo. 386. An examination of that case will disclose that the only natural object or permanent monument to which reference was made in the rejected certificate was one which described the claim as beginning at the westerly end of the Gilpin Mining Company’s property on the Williams lode. This was treated by the opinion as a description of a starting point at the westerly end of a certain mining claim. The court holds that this description is insufficient, that it is no tie and that the certificate was void because it made no reference to a natural object or to a permanent monument. The difficulty as stated *151 by the court is that there is no point named, from which the description should start. It may be that the court did not. wholly base its opinion on this proposition because we find in continuance of the discussion that the discovery shaft was tied to nothing, and there was no information furnished by the certificate which would enable any one to trace the boundaries of the claim. In departing from the apparent conclusions of the supreme court, we go no farther than to hold that in so far as that court decided that a tie to a patented claim was not a good tie, it is not in accord with the supreme court of the United States.' We do not discuss nor consider whether in other respects the description was so far invalid that it could not be upheld. We only intend to dissent from the opinion with respect to its determination that a tie to a patented claim is insufficient. In this we are completely supported by the following cases : Hammer v. Garfield M. & M. Co., 130 U. S. 291; Bennett v. Harkrader, 158 U. S. 441; Vide Jackson v. Dines et al., 13 Colo. 90. According to the Hammer case which was rendered by a unanimous court, the opinion having been written by that eminent mining lawyer, Mr. Justice Field, the only tie mentioned in the recorded certificate was in these terms: “ This lode is located about 1,500 feet south of Yaughan’s Little Jennie Mine.” There was no other tie; there was no other reference to a permanent object or to a natural monument; no courses or distances given except courses and distances stated as north, east, west and south; and four named stakes A, B, C and D. How these stakes were set, how the claim was to be found otherwise than by this reference, it is impossible to discover. Notwithstanding this, and with this general description and this general tie, the court holds that the statute which requires that the records of mining claims shall contain a description by reference to soipe natural object or permanent monument, was fully complied with by such a description and by such a reference. It holds that stakes driven in the ground are the most certain means of identification. It states that in this case the stakes were placed and that the location of the *152 lode was identified by its distance south of Vaughan’s Little Jennie Mine. That distinguished court says: “¥e agree with the court below that the Little Jennie Mine will be presumed to be a well known natural object or permanent monument until the contrary appears.” If this doctrine be true, and we are compelled to accept it and we fully concur in it, how it can be held in this case that there is no reference to a natural object or permanent monument when the claim is described as 3,000 feet west of the old California mine, a patented property, and the defendant offered to prove that this was the exact distance of the Sampson mine from it. This same doctrine was followed six years later and the case approved by the same court. Bennett v. Harkrader, supra. We find, however, in the additional certificate a still further reference which adds force and strength to the tie on which the defendant had a right to rely. The lode is described as on top of the mountain south of Dew Drop gulch. It is located as in section 11, township 1 N., range 73 west of the 6th principal meridan. It had an adequate description by the combination of the original and the additional certificate in the tie of the discovery shaft. That shaft is tied to the highest point of Sugar Loaf mountain by a surveyor’s line described as seventy degrees and thirty minutes east therefrom, and the defendant offered to show that such was the bearing of that discovery shaft and such the proper line and the proper point. In addition to this, it may be well argued and contended, and we think properly so, that when once the discovery shaft is located by reference to a mountain peak and therefrom a line is run to one of the end lines and to the middle of it, and thence to a corner post set in stones, that thus and thereby, by reference to a natural object and permanent monument, the miner has located his claim in exact conformity to this statute. We further hold that these two certificates, the original and the additional certificate, may be taken together, and if from the description contained in both, each referring to the other, the claim is properly described and adequately located by reference to a natural object and *153 to a permanent monument, the locator has fully complied with the law. Permanent monuments have been defined in many eases. Creede Mining & Smelting Co. v. Highland H. & M. Co., 95 Fed. Rep. 911; Meydenhauer v. Stevens, 78 Fed. Rep. 787; Southern Cross Co. v. Europa Co., 15 Nevada, 383. In these various decisions and many others which need not be cited, it has been time and again held that mountains, hills, canons, gulches, ravines and like natural elements in the landscape are natural objects and permanent monuments to whieh reference may be made. We here have not only a reference to the California mine but the claim is described as in section 11 and on the top of a mountain south of Dew Drop gulch, which when the claim is properly staked on the ground, is probably an adequate description. The whole object of the statute which requires a reference to a natural object or permanent monument is to direct the attention of the aftercomer to the locality of the claim, and if he goes on the ground and finds the claim properly staked, he may then go to the record and find out whether the statute has otherwise been complied with, and if therein there is a statutory description, the record is adequate and sufficient. Flavin v. Mattingly, 8 Mont. 242; Brady v. Husby, 21 Nev. 453.
We therefore conclude from an inspection of these two location certificates that the court erred in refusing to admit them.
We do not regard the decision in Drummond v. Long, 9 Colo. 336, as necessarily in opposition to this position. It is quite true a reference was made to the Hawkeye lode from which the Portland is said to lie about 1,500 feet north. Nothing further is stated about the Hawkeye. We are not advised whether it was a patented or a well known claim. The discovery shaft of the Portland was not tied to any corner or monument of either the location or the lode, nor was it possible to determine from what point on the Hawkeye location one should start to find and identify the shaft. It is quite true there is an apparent discrepancy between that opinion and the Hammer case. It is quite possible to construct an *154 argument on the latter which would tend to overthrow, or at least to weaken, the force of the decision. We are not compelled, however, to resort to a criticism of' that case in order to support the present decision. In the location certificate under examination we have a discovery shaft perfectly located by reference to a natural object. The northeast end line and the center <}f it is determined by a line run 800 feet from the discovery shaft. Thus drawn it will'strike the end of the lode; thence northwest a line is run seventy-five feet to corner No. 1 which is a post set in a mound of stones. The discovery shaft is perfectly located by reference to a natural object, and taking that as a starting point, we come to a post in a mound of stones which is a natural object in the ground, and one of the best of all monuments for the description of a mining claim. We likewise have a description of a claim lying on the top of a mountain south of Dew Drop gulch and 3,000 feet from the California mine to the east. There can be found within the lines of the Drummond decisionan argument and some positions which are seemingly in conflict with our decision. It may be difficult and require much ratiocination of a keen and subtile variety to reconcile this decision with those two cases in the 8th and 9th Colorado, and it may appear as though we were straining a point in attempting to distinguish this case from them. Whether distinguishable or not, we are bound by the decision of the supreme court of the United States. These references and these descriptions are entirely adequate and support the appellant’s title, his claim being otherwise validly located.
We deem it best now to refer to one other proposition which may become of some consequence on the subsequent hearing. It will be remembered that the Sampson lode as it was called after it was swung on the discovery shaft as an axis, was transmuted from a claim running due east and west to one running northeast and southwest. At the time of the swing, the Sampson lode was staked on the ground by stakes at the four corners set in mounds of stone and with another in the center of each side line. If the location was made on a *155 valid discovery and the statute was otherwise complied with, and the jury shall so determine, then we must hold the Sampson lode as located in 1891 was a valid location as against the Rainbow at that date. This is self-evident because at the date of that location the Rainbow lode had not been discovered or located, nor had any shaft been sunlc on it, nor any claim made about it. Nothing was done on this claim until August 30, 1895. It consequently follows, if the Sampson lode was properly located on the ground and properly stated, the notices properly posted, the annual labor performed and all things done in conformity to the statute, the Sampson lode had a good title when the Rainbow lode was located. On the argument and in the briefs of counsel we have been referred to the case of Frisholm v. Fitzgerald, 25 Colo. 290. We cite the case to support our position that the original and additional certificates were admissible. It states a further proposition which is used as an argument here, about which we are not at liberty to express our views. The principal opinion was prepared by Mr. Justice Goddard in whose judgment I have great confidence. This proposition respects the extent to which a locator may go when he files an additional certificate and the rights which he may thereby acquire. Observing the special concurrence of the chief justice and of Mr. Justice Gabbert, I notice that they express no opinion concerning his construction of section 2400 of our General Statutes. Mr. Justice Goddard very broadly holds that the locator of a mining claim may file this additional certificate for the purpose of correcting errors in his original location, or errors in the description of his claim, and that this additional certificate will confirm and secure his title as against any intervening claimants, his rights having been otherwise properly initiated and secured, providing he does not change the boundaries of his location. We are not required to consider this question. We neither decide it nor express an opinion about it because the subsequent location certificate of the Sampson lode, which describes the lode as swung upon the discovery shaft to a northeasterly and southwesterly direction was *156 fait accompli before the Rainbow lode was located. The owner of the Comstock, which he ultimately called the Sampson, swung the claim, staked the ground and did the annual work, and we assume, although all these questions are open to evidence on the subsequent trial, did everything necessary to perfect the claim prior to the time Fulton and his copartners located the Rainbow. There was a change of boundaries and a taking in of other land, but there were no intervening claimants. We therefore hold that the owner of the Sampson lode had a perfect right to swing the claim and change the location and take in other ground. Since this is true, it necessarily follows, all other facts being found by the jury in his favor, he acquired a good title.
In all this discussion and in whatever may be found in this opinion bearing on the questions of fact, it must not be assumed that we have attempted to conclude the parties on any matters of proof respecting the discovery of mineral, the staking, or the posting of notices, or the completion of the record and the transfer of title. It has necessarily been indulged in to elucidate and settle the questions of law. What we intend to hold is, that the court erred in refusing to admit the original and the additional certificate of location of the Corn-stock or Sampson lode. We hold that there is on the face of the second certificate a sufficient and adequate description by references to a natural object and a permanent monument. We further hold that the original location certificate is admissible and that it, with the additional certificate, may be used to determine any point in the claim or in the description of it by the required reference to a natural object and a permanent monument.
Since we conclude the court erred in rejecting these certificates its judgment entered on a directed verdict must be set aside and the cause remanded for a new trial in conformity to this opinion. .

Reversed.