TONOPAH & SALT LAKE MIN. CO. v. TONOPAH MIN. CO. OF NEVADA.

(Circuit Court, D. Nevada.    August 3, 1903.)

No. 734.

1. MINING CLAIMS—BOUNDARIES—AMENDED LOCATIONS.
   The statute of Nevada (Cutting's Comp. St. 1897, §§ 210, 213) giving locators of mining claims 90 days after posting of location notice in which to file certificate of location, and also permitting them at any time thereafter to file an additional or amended certificate, in which they may change the boundaries of the claim, "provided that such relocation does not interfere with the existing rights of others," is not in conflict with any law of the United States, but is consistent with and supplementary to the federal statutes; and an amended location perfected thereunder becomes the completed location of the discoverer, and is as valid and effective to define the boundaries of the claim as an original location, as against others whose rights were subsequently initiated.

2. SAME—ADDITIONAL NAMES IN AMENDED CERTIFICATE.
   The fact that a second or amended notice or certificate of location of a mining claim contains names other than those set forth in the original cannot be taken advantage of by other parties, but, as to the persons

whose names first appear therein, it may be treated as an original notice or certificate, and as a supplemental or amended notice or certificate as to those whose names appear on both.

3. SAME—REQUISITES OF AMENDED CERTIFICATE.

The law does not require that the object or purpose of making an amended certificate of location of a mining claim shall be specified therein; such certificate being effectual for all the purposes enumerated in the statute, whether mentioned in the certificate or not.

4 SAME—EXTENSION OR CHANGE OF BOUNDARIES.

The locator of a mining claim, who by an amended location extends or changes its boundaries, is not required to make any discovery of ore on the ground so added, or to take physical possession of or do assessment work thereon, but it becomes a part of the original claim, possession of which and work done on which extend to the entire location as amended.

Suit in Support of Adverse Claim to Mining Ground.

Dickson, Ellis & Ellis and Key Pittman, for complainant.

W. E. F. Deal, Kenneth M. Jackson, and Campbell, Metson & Campbell, for defendant.

HAWLEY, District Judge. This is a suit or proceeding brought under the provisions of section 2326, Rev. St. [U. S. Comp. St. 1901, p. 1430], upon an adverse claim and protest filed in the United States land office at Carson, Nev., against the application of the defendant for a patent to consolidated claim No. 2,012, embracing eight mining claims, for the purpose of determining which of the parties has the better right to the mining ground in controversy. The right and interest of the complainant to the land is based upon a location of a mining claim situate in Tonopah mining district, Nye county, Nev., known and designated as the "Pyramid"; and the right and interest of the defendant to the area in conflict is based upon the location of the mining claim known and designated as the "Valley View." A composite diagram is here inserted, which was prepared by complainant's surveyor for the purpose of showing the conflict existing, not only between the Pyramid and the Valley View in this suit (No. 734), but also between the Wandering Boy and Valley View in suit No. 735, 125 Fed. 400, and between the Stone Cabin and the Valley View and Silver Top in suit No. 736, Id. 408.

This diagram contains many red lines and marked points, inserted at the trial to illustrate and explain the testimony of the respective witnesses. Reference will be made thereto as occasion may require. (The Pyramid location overlaps the Valley View for some distance, covering ground to which complainant makes no claim.) The portion of the ground in conflict between the Pyramid and the Valley View is colored yellow, and is described in the bill of complaint as follows:

"Beginning at corner No. 3 of the Pyramid location, which is identical with corner No. 7 of survey No. 2,012, Valley View lode, and running thence along the southerly side line of the said Valley View lode as surveyed south, 82° 02' east, 1,478.3 feet, to corner No. 1 of said Valley View as surveyed; thence north, 1° 32' east, 83.1 feet, to a point on the line running from post No. 1 to post No. 2 of said alleged Valley View claim, as surveyed; thence north, 85° 15' west, 1,471.3 feet, to corner No. 3 of said Pyramid lode, the place of beginning. Area in conflict, 1.401 acres."

¶ 3. See Mines and Minerals, vol. 34, Cent. Dig. § 49.

The south line of the original location of the Valley View, as claimed by the defendant, is marked on the diagram by the broken black line drawn through the ground colored yellow from the original S. E. corner of the Valley View to the S. S. Center monument, which is 250 feet in a southerly direction from the Valley View discovery shaft, marked on the diagram, "V. V. Dis. Shaft." The red line drawn on the diagram from the point marked "N. W. Cor. V. V. Loc." to the point on the easterly end line of the Valley View, marked in red ink "N. E. Cor. V. V. Gayhart," represents the northerly side line of the Valley View in the additional and amended location of the Valley View, which will be hereafter referred to. It is proper to add, in explanation of the diagram, that the line in red east (about 30 feet) of the dark easterly end line of the Valley View represents the easterly end line of Gayhart's survey. The ground between these respective end lines was surrendered by Butler to the Stone Cabin claim (referred to in No. 736).

The contention on behalf of complainant is that the original location of the Valley View claim could legally embrace only the ground marked with dark lines on the diagram, with the corners and side center stakes and monumuents thereon, as designated, because the notice of location of the Valley View was placed in a discovery monument (marked on the diagram "V. V. Disc. M.") at the east end center of the Valley View; that, as matter of law, the locators thereof are only entitled to 300 feet in a northerly direction and 300 feet in a southerly direction therefrom, which would bring the southerly side line of the Valley View north of that portion of the Pyramid marked in yellow. In other words, that the Valley View was located in the form of a parallelogram, and is so stated in the location notice; that the location notice on the ground calls for 1,500 feet west to the west end center, and 300 feet on each side; that this must be a straight line between the discovery and the west end center, and that the side lines must conform to the line drawn through the center, that being the initial line establishing the location of the Valley View claim; that they have located a straight line as the north side line of the Valley View; that 300 feet south of that, connecting the discovery point and the west end center, is a straight line running parallel to the north side line (marked by a red line on the diagram); that the south side line of the Valley View must necessarily be a straight line, and that they would not be allowed to place a side center monument outside of the boundaries of their claim, and outside of 300 feet from the center of their claim; that at the date of the Pyramid location the ground marked in yellow was vacant, unappropriated public land, and was subject to location by the grantors of complainant. The defendant claims that the dark straight line on the southerly side of the portion marked in yellow is the southerly side line of the Valley View location. Defendant's contention in this regard will be best shown by a review of the evidence.

There are three independent suits between the same parties. They were tried separately, with the understanding and agreement between counsel that any testimony taken in either which was applicable to either or both of the other suits might be considered with like force

and effect as if given therein. The arguments of counsel were made after all the testimony was taken, and the three cases were argued together. The cases are not identical in all respects, either in the facts or the principles of law applicable thereto, but there is much in common between them. It would, perhaps, have been better if the cases had been consolidated for trial, but the agreements and stipulations of counsel have accomplished the same end. Separate opinions will, however, be prepared in each suit, in order to present the legal views which bear upon the conflict as made in each case; but as to matters common to all they will not be repeated, the reference made thereto in either to be applied to all.

In all of the three cases the facts admitted and proven clearly show that the respective locators of the mining claims in controversy (except as noted in the opinions) had fully complied with the mining laws in every respect, and the only point involved in each case is in establishing the boundaries of the respective claims, and the extent of the surface ground to which the owners of each claim are entitled. To do this it was necessary to prove each and every step taken by the original locators, every monument built by them, and where placed, every peg driven in the ground, and every stake placed in the monuments, with the marks thereon. A mass of testimony was taken upon these points, the details of which need not be specially referred to.

In considering the methods adopted of building monuments, posting notices, defining corners and directions of lines, etc., we must keep in mind the rules universally recognized as to the necessity and duty of applying to such acts of the pioneer locators the same liberal construction that was given by this court in Book v. Justice M. Co., 58 Fed. 106, 114, 115, and by the Court of Appeals in this circuit in Walton v. Wild Goose M. Co., 123 Fed. 209, and remember that we are dealing with locations made in a new, unknown, and previously undiscovered mining district, without any surveying instruments, or other means at hand to secure absolute accuracy as to courses and distances in marking the lines and defining the boundaries, etc. Another rule to be applied in each of the three cases is that, when a valid location of a mining claim is once made, it vests in the locator and his successors in interest the right of possession thereto, which right cannot be divested by the obliteration or removal, without the fault of the locator or his successor in interest, of the stakes and monuments marking its boundaries, or the obliteration or removal from the claim of the location notice posted thereon. The nature and character of these suits, and the objects and purposes to be accomplished by such proceedings, were explained and discussed at length by this court in Tonopah Fraction M. Co. v. Douglass, 123 Fed. 936, and the principles therein announced are applicable to each of the three cases.

The eight claims in the application for a patent embrace the original Butler group of mining claims, discovered and located by J. L. Butler, and were the first locations made in what is now known as the "Tonopah Mining District." Butler went to Tonopah May 19, 1900, accompanied by his wife, on a prospecting trip. After considerable search, he discovered mineral-bearing rock, the value and richness of which were to him unknown. He left Tonopah May 27th, and returned to

his home at Belmont, distant from Tonopah about 60 miles. At the time he left he took samples of ore from the lode he had discovered, leaving a portion of said samples with assayers at Klondike, in Esmeralda county, and others with W. C. Gayhart at Austin, Nev. The returns made of the assays taken showed the ore to be of great value. He returned to Tonopah about August 25, 1900, and on this trip posted notices of location on the eight claims, the Valley View being the seventh claim located. The original notice, with the certificate of location hereafter referred to, was found by the surveyor, Charles P. Brooks, in a tin can in the monument marked on the diagram "V. V. Orig. Dis. Mt.," on or about the 11th day of May, 1902. This notice of location was written with a pencil, and when introduced was weatherworn and difficult to make out. As near as it could be deciphered, it reads as follows:

"Valley View Mine Location Notice.

"Notice that J. L. Butler, the undersigned, on this 30 August, 1900, locates and claims for mining purposes 1,500 by 600 feet on this lode or vein containing gold, silver and precious minerals commencing at this notice and monument and running westerly along the side of the south hill to another monument making 1,500 feet from location notice, also 300 feet on each side of center of location for surface ground, and all dips, stratas, or other minerals therein; this mine shows good strong lode * * * Desert Queen lode on 27 day of August by J. L. Butler will on the southeast corner overlap or touch part of the surface of the Valley View ground; the Burro mine will nearly if not quite touch the northwest corner of the Valley View also. No ground claimed south of this mine. It is situated most southerly of all the mines in open country on south hill in view of the valley * * * and passed through the mountain about five miles south of the Tonopah Springs just at the foothills of Butler Butte, fifteen miles east from Lone Mountain foothills of Montezuma Valley * * * and is supposed to be in Nye County, State of Nevada. J. L. Butler, 1,500 feet."

On the 8th day of October, 1900, James L. Butler, accompanied by Mr. Oddie and Mr. W. Brougher, returned to Tonopah with two loads of timber to be used as stakes in constructing the monuments, and marking and defining the boundaries of the mining claims which he had previously located. Between the 1st and 24th of November, 1900, monuments were erected on the lines and corners of the original location of the Valley View, and the discovery work done upon the claim. On the 24th of November, Butler filed in the clerk's office of Nye county his certificate of location of the Valley View, which was placed in a tin can, and found by Brooks, as before stated.

Mr. Gayhart on or about the 20th of March, 1901, made a survey of the eight claims. With respect to the Valley View location, as surveyed by him, he states that after the survey he prepared the amended certificate of location, using a printed form, and to this added a tissue page on thin paper, with the field notes typewritten thereon, and the names of the amending locators; that he made this in triplicate, "one to be posted on the claim, or put in the mound in the location monument, * * * and one that I retained, and still have in my possession, and one that was placed on record"; that this amended certificate of location was posted or put in the monument at the east end center of the claim as designated by his survey (marked "Loc. 2012" on the diagram). The record shows that monuments were built

at the time designating the corners and side and end line centers at the points designated in the amended certificate of location. This certificate reads as follows:

"Additional and Amended Certificate of Location.

"Know all men by these presents: That the undersigned, J. L. ·Butler, W. Brougher, T. L. Oddie, Alice H. Gayhart and B. F. Higgs, citizens of the United States, have this 20th day of March, 1901, amended, located and claimed, and by these presents do amend, locate and claim, by right of the original discovery, and the location heretofore made, such deeds, transfers or conveyances as may have been made, and this amended location certificate made, filed and recorded as provided by federal law and by the laws of the State of Nevada now in force, and local customs and rules, fifteen hundred linear feet, on this lode, vein, ledge or deposit, bearing gold, silver, lead, copper and other valuable minerals, with all its dips, angles and variations, as allowed by law, together with 300 feet on each side of the middle of said vein at the surface, and all veins, lodes, ledges, or deposits and surface ground within the lines of said claim.

"This said lode was originally located by J. L. Butler on the 30th day of August, 1900, and named the Valley View Lode, by which name it is found of record in Book D of Mining Notices, pages 324 and 325, Nye County, Nevada, Records. The name of this lode is Valley View. The date of this amended location is March 20, 1901. The name or names of the amending locators are, J. L. Butler, W. Brougher, T. L. Oddie, Alice H. Gayhart and B. F. Higgs. From the discovery point, 690 feet easterly from the discovery shaft, there is claimed by us, 1,500 feet in a westerly direction along the course of said lode or vein. The general course of this vein is east and west. The discovery shaft or its equivalent is situated upon the claim 690 feet west from the east end center, and exposes the ledge at a depth of fully ten feet; its dimensions are 12 feet long by 3 feet wide by 10 feet deep.

"This further additional and amended certificate of location is made and filed without waiver of any previously acquired and existing rights in and to said mining claim; but for the purpose of correcting any errors or omissions in the original location, or location certificate, description or record; and for the purpose of securing the benefits of the Act of the Legislature of the State of Nevada, approved March 16, 1897, and the amendments thereto, and of conforming to the requirements of law. The amending locators hereto are the original locators or lawful grantees deriving title and right of possession from them, through deeds of conveyance.

"This said location is described by metes and bounds as follows, to wit:

Feet. Commencing at Cor. No. 1. On the southeast slope of Mt. Oddie. Sec. Cor. common to Secs. 25, 26, 35 and 36, T. 3 N., R. 42 E. M. D. B. & M. bears N. 17° 10′ E., at the distance of 4,345 feet. A monument of earth and rock over three feet high with stake, marked 'N. E. Cor. Valley View.'
Thence S. 1° 30′ W.

600   To Cor. No. 2, intersecting south side line 2 to 3 Silver Top lode. A monument of earth and rock over three feet high with stake, marked 'S. E. Cor. Valley View.'
Thence N. 82° 10′ W.

1,500  To Cor. No. 3. A monument of earth and rock over three feet high with stake, marked 'S. W. Cor. Valley View.'
Thence N. 1° 30′ E.

600   To Cor. No. 4, intersecting south side line West End lode, and south side line Burro lode. Near south side of Main Street between Brougher and Oddie Avenues. A monument of earth and rock over three feet high with stake, marked 'N. W. Cor. Valley View lode.'
Thence S. 82° 10′ E.

1,500  To Cor. No. 1, the place of beginning, intersecting west end line of Silver Top lode and south side line of Burro lode. All courses from the true meridian, Variation 16° 20′ East."

The owners of the said Valley View lode, and the interests owned by them in said lode, are also set forth in this certificate.   It was—

"Filed for record Apr. 16, 1901 at 9:45 A. M. T. F. Egan, Dist. Recorder. Recorded at request of J. L. Butler May 1, 1901 at 20 min. past 5 P. M. in Book E. of Ming. Rec. pages 29/0/1, Nye County, Nevada, Records, W. Brougher, Recorder."

It is admitted that the ground described in this additional and amended certificate of location does not include any more ground than the law allows.   The location thus made was in the form of a parallelogram 1,500 feet in length and 600 feet in width, and a straight line drawn from the end centers does not exceed 300 feet from either the north or south side lines thereof.   The northerly side line of the Valley View in the application for a patent does not follow the lines of either the original location or the amended certificate, being further drawn down in order to avoid any conflict with other locations.   This was done by agreement of the parties interested in that portion of the ground.

The whole case, so far as the legal questions have any bearing, depends upon the validity or invalidity, and the interpretation and effect, of this amended certificate of location.   The Pyramid notice of location bears date May 24, 1902, and the certificate of location is dated August 19, 1902, and recorded August 21, 1902.   Both the notice and the certificate of location were signed, "Tonopah and Salt Lake Mining Company, by J. M. Healy, Supt."

It will be noticed that the original location of the Valley View, the certificate of location, and the additional and amended certificate of location were long prior in point of time to the location of the Pyramid.   The right of the original locators to change their original location, so long as such change does not interfere with the existing rights of others acquired previous to such change, is unquestioned.   Erhardt v. Boaro, 113 U. S. 527, 533–536, 5 Sup. Ct. 560, 28 L. Ed. 1113; McEvoy v. Hyman (C. C.) 25 Fed. 596, 600; Shoshone M. Co. v. Rutter, 87 Fed. 801, 806, 31 C. C. A. 223; Thompson v. Spray, 72 Cal. 528, 529, 14 Pac. 182; Strepey v. Stark, 7 Colo. 614, 620, 5 Pac. 111; Craig v. Thompson, 10 Colo. 517, 16 Pac. 24; Frisholm v. Fitzgerald, 25 Colo. 290, 53 Pac. 1109; Duncan v. Fulton, 15 Colo. App. 140, 148, 61 Pac. 244; Sanders v. Noble, 22 Mont. 110, 55 Pac. 1037, and numerous authorities there cited; Morrison v. Regan (Idaho) 67 Pac. 956; 1 Lind. on Mines (2d Ed.) § 396 et seq.

In several of the Pacific Coast states, statutes have been enacted, supplemental to and consistent with the laws of the United States, clearly defining the rights and duties of the miners in making and perfecting their locations, and recording the same.   The statute of this state approved March 16, 1897 (Laws Nev. 1897, p. 103, c. 89; Comp. Laws 1900, § 210), gives 90 days after the date of posting the location notice in which to file a certificate of location, which must be recorded, and provides what it shall contain.   In another section it provides for the filing of an additional or amended certificate of location.   This section reads as follows:

"If at any time the locator of any mining claim heretofore or hereafter located, or his assigns, shall apprehend that his original certificate was de-

fective, erroneous, or that the requirements of the law had not been complied with before filing; or shall be desirous of changing his surface boundaries or of taking in any part of an overlapping claim which has been abandoned; or in case the original certificate was made prior to the passage of this law, and he shall be desirous of securing the benefits of this act, such locator or his assigns may file an additional certificate, subject to the provisions of this act: provided, that such relocation does not interfere with the existing rights of others at the time of such relocation, and no such relocation or the record thereof shall preclude the claimant or claimants from proving any such titles as he or they may have held under previous location." Cutting's Comp. Laws, 1900, § 213.

The courts, previous to the enactment of statutes of this character, held that the locator, after posting his notice of location, should be allowed "a reasonable time" within which to perfect his location.   1 Snyder on Mines, § 205, and authorities there cited; Doe v. Waterloo (C. C.) 55 Fed. 11, 15; Id., 70 Fed. 455, 457, 458, 17 C. C. A. 190; Gleeson v. Martin White M. Co., 13 Nev. 442, 460.   One of the objects of the state statute was evidently to make this time certain and definite.   The Legislature of this state, in enacting this statute, recognized that difficulties are always liable to present themselves to the enterprising prospector, especially in districts where no actual development has been made, to determine with accuracy and precision the course of the ledge which he has discovered, its apex and width.   The statute gives to the locator of the lode 90 days to take such bearings as he can to guide him in marking and defining his boundaries, and further provides that if he discovers that he has made mistakes, has taken up more or less ground than he is entitled to, or from any cause that his location is defective or erroneous, he may relocate or change his boundaries, provided the same "does not interfere with the existing rights of others."   It gives the original locator the full measure of the rights which the mining laws permit him to acquire as the reward of his energy in discovering the mineral lode or vein.   It has always been the policy of the government to encourage its citizens in searching for, discovering, and developing the mineral resources of the country; and this policy can always be best subserved by permitting the discoverer to rectify and readjust his lines, whenever from any cause he desires to do so, provided he does not interfere with or impair "the intervening rights of others."   There is no statute, law, rule, or regulation, state or national, which denies this right.   The amended certificate of location, when made, becomes the completed location of the discoverer, and is just as valid as if it had been made in the first instance.   It necessarily follows that parties coming upon the mining claim and ground described in the amended certificate of location, subsequent to the perfection of such amended location in compliance with the mining laws, can acquire no rights, because they have not been injured, and have no right to complain.

The amended certificate of location in the present case contains the names of several persons, as locators, who were shown by the evidence to have legally acquired interests therein after the original location had been made, and before the amended certificate was prepared or filed.   The rule is that, where the second or amended notice or certificate of location contains names other than those set forth in the original, it cannot be taken advantage of by other parties.   It may be

treated as an original notice as to the persons whose names do not appear on the first, and as a supplemental or amended notice as to those whose names appear on both. Lind. on Mines (2d Ed.) § 398; Thompson v. Spray, 72 Cal. 528, 529, 14 Pac. 182. The law does not require that the object or purpose of making the amended certificate shall be specified therein. A general statement that it is made to cure errors or defects will be sufficient, the general rule upon this subject being that the filing of such certificate is effectual for all the purposes enumerated in the statute, whether such purposes are mentioned in the certificate or not. Lind. on Mines (2d Ed.) § 398; Johnson v. Young, 18 Colo. 625, 629, 34 Pac. 173.

One of the reasons testified to at the trial was that the original north side line of the Valley View took in the Silver Top discovery shaft, and also interfered with other previous locations. Another was to straighten up the south line. In making the change from the original marking of the northerly side line, the northeast corner of the Valley View was dropped down in a southerly direction along the eastern end line about 83 feet, at which point a new monument and stake were placed to mark the northeast corner of the amended location of the Valley View. A monument and stake were placed 300 feet southerly from the northeast corner to designate the east end center of the Valley View, marked on the diagram "Loc. 2012," and are about 83 feet south of the "V. V. Orig. Disc. Mt." From the point marked "Loc. 2012" to the southeast corner of the Valley View, as shown on the diagram, is 300 feet. The location of the Valley View under the amended certificate of location was and is valid, as against the Pyramid location, the owner of which had not at that time acquired any right whatever to the ground in controversy. At the time the Pyramid location was made, the complainant knew where the monument marking the south side center of the Valley View was. It knew that a monument was erected at the southwest corner (No. 7), V. V. location, and that a similar monument was erected at the southeast corner of the amended location (under the Gayhart survey), and must have known—at least must be held to have had knowledge—of the monument and stake on the east side center where the amended location was put.

When Mr. Brooks, who had been employed by the complainant to find certain facts which it believed would tend to support its theory, went to the "V. V. Orig. Disc. Mt.," he was not looking for any amended certificate of location, or any new monument. He was doing just what he had been employed to do—trying to find where the original notice and the first certificate of location were posted. He found them at the "V. V. Orig. Disc. Mt." On cross-examination Mr. Brooks was asked whether he did not find an amended notice of location. He answered:

"I am trying to recall exactly the point where I found that. It was a very windy day, and in going down over the hill to that notice of location I did find what purported to be an amended notice of location on the ground near that monument. It appeared as though the wind had blown it out. Q. Did you examine that? A. Yes. Q. How did that compare or correspond with the original, from your examination? A. It appeared to correspond, claimed some ground from the same point, * * * as it appeared to me.

Q. Didn't that original location speak of a discovery shaft 650 feet from the west end of the Valley View? A. My remembrance of it is that it did. I have not read it for a long time. Q. And did it not then claim a direct line directly east to the center stake—directly east on a direct line to the middle center stake of the Valley View ground?"

Here objections were made, it appearing that the witness could not remember what was in that notice.

It is deemed safe to say that this notice was the amended certificate of location. It was evidently not deemed to be a necessary link in the chain of evidence tending to support complainant's theory of the case, or it would have been more carefully scrutinized by Mr. Brooks, for his entire testimony showed to the court that he was not only a competent surveyor and engineer, but was at all times faithful in looking after the interest of his employer; making the most of everything he could find or see in its favor, and ignoring everything that militated against it. He marked on his map such points only, as he had been requested to do by his employer. Other references to his testimony will explain this matter. After his testimony about the notices of location and amended notice, the following questions and answers appear (in his cross-examination):

"Q. Was there not a monument on the ground south of that which you have indicated on this map—the location monument—some 80 feet? A. There was a post there; yes, sir. Q. Then, sir, will you kindly state to the court why, in making this map, when you made a survey of the Valley View ground, you didn't indicate that? A. Simply, I made that map to illustrate the conflict between the Pyramid and Valley View lodes. I put on nothing except what related to that ground colored yellow; that is, primarily to that ground. There are a lot of workings and monuments on the white portion of the Valley View not shown—I didn't attempt to show. * * * Q. Will you kindly take your pencil and place on this map where you found that post and what was on it? * * * A. Loc. 2,012. * * * Q. Now, Mr. Brooks, did you not find a monument—a center south monument of the Valley View—the side center? A. Yes; it was side center. Q. Is that shown on your map? A. No, sir; it is not. Q. Will you kindly put that on your map? A. I thought I had a record of it here, but I don't see it. Q. To the best of your recollection, mark it where you think it is. A. I think it is 756 feet from the corner where the numbers are. (Marking on map.) I will mark that side center. Q. Mr. Brooks, what were the marks upon that monument which you have marked here 'S. S. Center'? A. I don't know as I can give you those marks. I don't remember them. I don't remember without looking at my notes and refreshing my recollection of having seen that side monument when I was out there, so I am unable to describe it. I put it on there from the patent—from the record. Q. Didn't you see any monument there at all? A. I don't remember it at this time. If I did, I made no memorandum of it. I was taking in the corners, knowing that the line was straight between the corners. Q. You ran out the south line, didn't you? A. I did—a portion of it—not directly on the line. My lines were run by traverses connecting various points on the claim. Q. Then that is the reason why you don't remember now having seen it while you were there, but you knew that there was a south side center monument described in the application for patent? A. Yes. Q. And you didn't look for it? A. I didn't take special pains looking for it, because in the patent application the line was straight from 7 to 1, and practically one course and one distance, and I was connecting the exterior boundaries of the property rather than the interior posts. Q. But you were satisfied that 756 feet from the southwest corner of that line was where that monument was? A. I was satisfied from the observation that I had made of those surveys; yes, sir. Q. And you answered my question before that the reason you didn't mark these other matters was that

you were simply surveying for this yellow strip of ground which was the territory in conflict. That is the fact, is it? A. Yes, sir. Q. Well, didn't the fact that there was a monument—a south side center monument—enter into your calculations in relation to the conflict? A. Not particularly. Having the extreme ends of that line, knowing it to be the straight line, I didn't take any special pains to hunt up the intermediate monuments."

Mr. Brooks, at the time he found the original notice of location and the original certificate of location of the Valley View, was accompanied by Mr. Wilson, a surveyor and mining engineer, also in the employ of the complainant; and from the testimony it appeared that he had abstracted the notices from the tin can, and appropriated the same for his own uses and purposes, and, being in court, he was called as a witness by the defendant, and admitted, under oath, that he took possession of these notices "by his own authority," and carried them away to Salt Lake, and delivered the same to the attorneys for complainant for the purposes of presenting them to the court as the best evidence in regard to where they were posted on the ground, "regardless of any surveys or contests or protests," and because he thought "they were safer" in his possession than they were or would be if left where they were found. "I was acting for the Salt Lake & Tonopah Company."

The broad contention of complainant, as made in all the three cases, is that the locators of the Valley View must be held to the lines of its original location; that they acquired no new rights in their amended location, because it included ground not within its original boundaries, and they did not make any relocation of such new territory, and did no annual assessment work thereon, and did not make any discovery of mineral therein, and were never in the actual possession thereof. The law does not require that such things should be done in order to make the claim, as described in the amended certificate of location, valid to the full extent of the boundaries therein described, as against any subsequent locator of any portion of said ground. If such is not the true intent and meaning of the state statute, it has no meaning, and ought never to have been passed. The object of the state statute has already been fully discussed. It was to protect, not to deceive, the locator. It was to enable the miner to make good the developments he had made—the assessment work he had done under his original location—and at the same time include other ground not embraced in his original notice or first certificate of location, so as to make his lines conform to the directions which his labor, time, and expense had indicated to him as the true course of the lode. In making the additional amended notice, it was not necessary for him to take physical possession of the additional ground, sink new shafts, or make any new discoveries of mineral. The fact is that, before the amended location was made, the owners of the Valley View had sunk shafts and run cuts at an expense of thousands of dollars at different points from the point marked "V. V. Orig. Disc. Mt." in the direction of, and within a few feet of, the point marked "S. S. Center," and had discovered mineral in nearly all of them; and the complainant, in building the monument on the yellow ground at the point marked "P. Dis.," used mineral rock taken from one of these near-by shafts or cuts on the Valley View claim.

In Duncan v. Fulton, supra, the court, in discussing the question as to the rights of miners under different certificates of location made under the provisions of the state statute, among other things, said:

"The question of good faith is an important consideration, because that is the real basis of the rule which all the courts, as we observe them, have adopted in construing these mining statutes—liberality of construction. * * * Under the specific terms of our statute, the boundaries need not be the same. The miner is given the absolute right to change his boundaries to take in overlapping and abandoned claims, or other territory which has not been located or occupied. It is to the end that the prospector may cure any defects in his location, and conserve and protect the results of his industry, that the authority is given. For this reason, * * * the original [certificate] and the additional one ought to be admitted; and, we believe, if therefrom and thereby, and not necessarily from one alone, but from either one or both together, the necessary statutory steps can be shown to have been taken, the miner thereby establishes an unimpeachable title as against the subsequent claimant. In other words, we believe the law to be that though neither one, as a whole, may be absolutely correct and in perfect conformity to the statute, yet if in both and from both there may be found and deduced all that the law requires, the statute being otherwise complied with, the miner's record is complete, and his title is perfect."

See, also, Frisholm v. Fitzgerald, 25 Colo. 290, 53 Pac. 1109.

From all the facts disclosed by the record in this case, and the principles of law applicable thereto, I am of opinion that complainant, at the time it made its location of the Pyramid claim and entered upon the ground marked in yellow on the diagram, was a mere trespasser upon the ground then legally possessed by the defendant by virtue of the rights acquired by it to the Valley View mining claim.

Let a decree be entered in accordance with the views herein expressed in favor of the defendant, and for its costs.